Is it set up for Judge Weiss? Good morning. Oh, he is there? They can see him, we can't. Okay. Can you see him on that monitor? Yeah. Great. The one in front of me, he's not up. That's fine. Morning. We'll announce the first case, and as you can see, Judge Weiss from Pittsburgh is sitting with us via video conference. Judge Weiss, since I cannot see you, just jump in any time you feel like it. Very well. Eric, Eric's going to try to turn it on. Can you get ESPN? That's okay, Notre Dame lost, who cares? Eagles won. Or should I say that Iggles won. First case is HOMA versus American Express Company, number 07-2921. Mr. Bland and Ms. Strickland. Mr. Honor, if it please the court, my name is Paul Bland. I represent the appellants in this case. With me are my co-counsel Gary Grafman and Howard Lawnman. I'd like to try and reserve five minutes for rebuttal if I can. Sure. My time. I'd like to begin with the court's indulgence on the Federal Arbitration Act preemption issue. American Express's position is that even if New Jersey law governs, rather than Utah law, and even if the class action ban being challenged here is unconscionable under New Jersey law, the New Jersey law is still preempted by the Federal Arbitration Act. I mean, that's really the first hurdle you have to get through, isn't it? I believe that's right, Your Honor. And they derive that position from the gay versus credit-informed case. And we disagree entirely. We feel that New Jersey law is completely consistent with the Federal Arbitration Act. And how do you distinguish gay, which has some pretty broad language? The gay case does have some pretty broad language, but the gay case is involving a completely different set of state laws. The gay case involves Pennsylvania law, which is very different from New Jersey law in a crucial respect. In gay, this court said that what Pennsylvania law held was that it was unconscionable for an arbitration clause to waive, and I quote, the right to bring judicial class actions. So Pennsylvania was drawing a distinction between cases that can go forward in court and saying that plaintiffs always had a right to a class action in court and cases that could go forward in arbitration. In other words, if a contract banned class actions in court but permitted them in arbitration, that would have been unconscionable under Pennsylvania law, as this court interpreted it. And that would clearly be preempted by the Federal Arbitration Act because it would be taking a category of cases and always saying that you could never have arbitration for them. New Jersey law is completely different. There is nothing that is anti-arbitration in New Jersey law. If you look at the Muhammad versus County Bank case, the court struck the ban on class actions, but at the end of the day, it enforced the remainder of the arbitration clause and sent the case to arbitration for the arbitrator to decide whether or not the case would proceed on a class action basis. So it only rejected part of the clause. It rejected the class action part. That's right. But it didn't object. Let me ask you something. Can you square gay with the Doctors Associates Supreme Court case? I think that you can because I think that what gay did, Doctors Associates says unconscionability challenges are going to be left for state law. But state law can't say that all arbitration clauses are always unconscionable. And Doctors Associates was a case where Montana had a statute that treated arbitration clauses differently than other types of contracts. It said that you had to have on the front page in bold print that this is an arbitration clause, this kind of thing. And Pennsylvania law, as this court looked at it in gay, was saying that you can never have a ban on that you always have a right to go forward in court. To go or whatever. Right. In New Jersey, by contrast, the Muhammad case said our decision, striking down the ban on class actions, would be the same if this case involved an arbitration clause or not. Because there are a lot of companies, you know, that have standard form contracts that don't have anything about arbitration but ban class actions. And New Jersey is saying the ban on class actions in a case where it would have the effect of being a get out of jail free card would be unconscionable whether it's in arbitration or in court. It has nothing to do with arbitration. And the New Jersey Supreme Court said the case wasn't about arbitration. And that's consistent with a U.S. Supreme Court case. So what can affect New Jersey saying that we're not against arbitrations, we're against prohibitions against class arbitrations? In a setting, but not always. Only in settings where there's a small amount of money at issue and it's a type of case that few people would notice. New Jersey doesn't have a flat rule that class action bans are always unconscionable. But only in cases where the class action ban would serve as an exculpatory clause. But in Gay, the problem that I have is, and maybe you can limit it, but there you have a very similar type of prohibition. And the court is, and while the law is, you're saying, relating to class actions perhaps in general, that is whether you can have a judicial class action, court class action. Right. It appears our court went further. Well, I think that there are two ways of looking at Gay. I'm looking at 394 and 395. If Gay is read as broadly as going past the judicial class actions, if Gay is read as going past the part where it said that Pennsylvania law, quote, determining whether a matter should be arbitrated, and goes to saying that class action, if Gay is saying that even something like New Jersey law would be preempted, then you would be reading Gay as conflicting with the Delta Funding versus Harris case, which is this court's case has two decisions in this court, in which this court said that the plaintiffs have challenged an arbitration clause on a bunch of grounds. And one of them was that it had a class action ban. The plaintiffs said that's unconscionable. And this court said that's an important issue of state law, which we're going to certify to New Jersey Supreme Court. And New Jersey Supreme Court. And we did. And you did. And they came back and said it's not unconscionable in this setting, case over $100,000, a case where the person knows what's happened to them. And this court then thanked them. Now, if American Express' reading of Gay is correct, then the Delta Funding case makes no sense at all. It's crazy. I mean, their interpretation would have this court, first of all, at war with itself, because there's no way that they can make Gay consistent with Delta Funding under the way they read it. The only way to make Gay consistent with Delta Funding is if you look at the enormous differences between the state laws. And I think that that does provide you a clean way of saying that Delta Funding was not crazy and Gay is not crazy. Both are consistent. Let's assume you're right. Why don't we move on then to would a New Jersey court ignore the choice of law provision and apply New Jersey law to this contract? Now, would it be to the entire contract or would it be just to this provision? It would be to the entire. Well, actually, as I understand choice of law, everyone else is a state law issue. Under the restatement, as I understand it, and I can't remember this section, it's an important question, but I don't think we've read the statement. It's 187-2. Well, there's another section of the statement that says you look at each issue in a case on a, each choice of law applies to each issue in a case. So it is common in choice of law cases for a court to apply one state's law to one issue and another state's law to another issue. We are simply arguing that in this case, the ban on class actions is likely to violate a fundamental policy of New Jersey. But don't, to get there, don't you have to say that, in other words, under 187-2, as I understand it, a New Jersey court could only substitute New Jersey law for Utah law if, one, New Jersey would be the state law that would apply in the absence of any choice of law provision. That's right. Two, New Jersey has a materially greater interest than Utah. And then, three, applying Utah law would be contrary to a fundamental public policy of New Jersey. Right, and there, we have cited, and this is New Jersey, because this case is sitting in diversity, the question of what state law of conflicts of law governs is clearly a New Jersey question. This court said that in the Gibbs case and the Supreme Court said that in the Claxton case. Now, we don't have a New Jersey Supreme Court decision on this, but in our briefs, we cite a lot of New Jersey law and they cite a lot of Ninth Circuit law. But there are three New Jersey appellate cases from intermediate appellate courts that involve New Jersey consumers and lenders that were out of state. And the cases mostly involve the Retail and Sales Act of New Jersey. It's the Weiner Motors case. But let's just see if we can just, the first prong here is, would New Jersey court apply New Jersey law in the absence of a choice of law provision? And it seems to me that what the, you look at 187.2, and that says on this prong, you look to 188, and that says that you look at these various contexts in conjunction with these so-called Section 6 principles. And the Section 6 principles, really there's a number, but the four that seem to apply, the needs of the interstate system, the relevant policies of the forum, the relevant policies of the interested states, and the determination of justified, or protection of justified expectations, it would seem that this is a pretty close call. Well, I would disagree, Your Honor, if you read the New Jersey cases involving New Jersey consumers and out-of-state lenders. For example, in their three intermediate court of appeals, admittedly none of them are New Jersey Supreme Court, but in the Weiner Motors case, it's a 1986 intermediate appellate court case, they held that the New Jersey Retail Installment Act applies to New Jersey consumers, quote, no matter where, no matter from where the seller deals. In the Beagle case, which is a New Jersey appellate court decision from 2007, it's a consumer fraud class action, they said the determinative factor is the residence of the consumer, because otherwise you would have the risk of another state's law frustrating New Jersey legislative policy. That one factor in a consumer fraud case is determinative. That sort of gets us to the third, the fundamental policy. In other words, you have in this system, you have various states choosing one state's law to apply to a contract, a credit card. And I imagine a lot of us have American Express cards, for example. And my guess is that mine probably says the same as everybody else's that Utah law applies, I would guess. The question then becomes, is it in this system, in order to have uniformity, that's one of the Section 6 principles, then you look to, okay, the state law chosen, in this case Utah, are there contacts with Utah that would have a New Jersey court apply Utah law in the absence of a choice of law provision? And what I'm saying, Your Honor, is that in lending cases, and I know I'm going to run out of time. I think it's important for me to go into this if I can. Mike, why don't you add five more minutes? In New Jersey state appellate court cases in which there's a question, they basically say that it's a mixed question. If a New Jersey consumer uses an American Express card in a New Jersey restaurant, is that a New Jersey transaction? Is that a Utah transaction? They argue it's a Utah transaction. The New Jersey courts take a much more New Jersey-centric view of consumer protection rights because they're very proud of it. They think that the very best consumer protection act in the country, and they think it's important for it to apply to their consumers. But you said it's a contract as a whole, right? In other words, would a New Jersey court apply New Jersey law to this contract as a whole, or are you talking about the specific provision? That's why I asked the first question. Right, and what I attempted to answer, Your Honor, was that my understanding is that under the statement that choice of law issues apply issue by issue. So the choice of law questions apply issue by issue. First, the only thing that's being challenged here is a class action ban. With respect to that, I believe it's clear. So you're saying that you think a New Jersey court would enforce the choice of Utah law but for this provision? I'm saying that a New Jersey court, I don't know whether they would apply Utah law to any other issues because no other issues have been raised. I don't want to say that Utah law would be stricken with respect to everything because I think that goes beyond the way the restatement analyzes it. The restatement tends to analyze it question by question. But with respect to the ban on class actions, I think it's fairly clear that there are a series of New Jersey intermediate appellate decisions between out-of-state lenders and in-state consumers. And New Jersey always finds that without respect to where the seller is dealing from, that New Jersey's law governs, that the determinative factor is the residence of the New Jersey consumer. And with respect to the class action ban, I think if you look at all the intermediate appellate New Jersey law, you can't find a case in which they've ever said it's all right to apply another state's law that would be weaker than New Jersey consumer protection law from the perspective of New Jersey. They always find that the residence of the consumer is determinative. It outweighs where the seller is from. And the New Jersey courts view a loan to someone inside New Jersey as much more of a New Jersey transaction than American Express, which American Express is sort of importing some of their merits defenses on the National Bank Act, I think, into the arbitration query and into the class action ban query. And I think they're going beyond that. But let me say one thing, Your Honor. If you believe that it's a close question what New Jersey law would be on this, then we do think that the appropriate thing for this court to do would be to certify the question to the New Jersey Supreme Court. Because I feel fairly confident the New Jersey Supreme Court is going to say, when we said in the Muhammad case that it's important for our consumer protection laws to be enforced and we don't want to lose the deterrent effect of those laws, that if 10,000 people get cheated and none of them or only one or two of them are able to bring a case, that that completely undermines our consumer protection laws for New Jersey residents only, that that goes to important state policy. They didn't call it a fundamental state policy and there wasn't a choice of law provision, but you look at the intermediate cases. Although you wouldn't certify this question to a New Jersey state court if the FAA preempted, right? That's true. If the Federal Arbitration Act wipes away all state law whatsoever and Delta funding is wrong and all the other federal court of appeals are wrong, then that's the end of the game. Wouldn't that issue probably weigh against certifying it? I mean, that's an important issue. Well, actually, I think that this court should decide the Federal Arbitration Act preemption issue and say that Delta funding was right and that GAE only involves laws like Pennsylvania that are limited to bans on judicial, limited to saying that you always have a right to a judicial action. I think it's important for this court to clear up the law of Federal Arbitration Act preemption. Don't we really know from Muhammad what the Supreme Court in New Jersey has said? I think so, but as I hear Judge Ambrose saying he feels it's a close call, so I'm respectful of the fact that I don't have an all four Supreme Court precedent from New Jersey. I have a strain of intermediate appellate decisions, which I think clearly go in my direction, but this court in the past has a number of times certified cases where there's state appellate authority and said, well, we want to see what the state's high court says. So to the extent you think it's a close call, rather than ruling against us on New Jersey law, I'd rather see it go to the New Jersey Supreme Court. But I guess actually my opinion is that the New Jersey Supreme Court is pretty clearly indicating that they think that something like this would gut New Jersey law and that that would be a great problem. Thank you very much. Ms. Strickland. Thank you. Good morning. I'm Julia Strickland for the Appellee American Express. There are two overarching principles at issue here, both of which I think came up in the dialogue with Mr. Bland. First is the overarching principle that contracts should be enforced as written and that the parties' agreements should be honored and their justified expectations satisfied. But in effect, I think what your opponent is saying, Mr. Bland, is that, yes, a New Jersey court may enforce the choice of Utah law, but if you come to New Jersey to enforce this particular provision, this aspect of this particular provision that says that class arbitrations are prohibited, that violates the fundamental policy of New Jersey. And then we go about analyzing it in a host of ways. First of all, does the FAA preempt? If the FAA does not preempt, then we go to the 187-2 analysis, and then we see what happens. So maybe to me the first issue is he's saying that he can distinguish gay because gay did not apply to, in effect, class arbitrations because of the Pennsylvania law that just dealt with that you shall allow judicial resolutions. Here, Mohammed says, look, we're not against arbitrations at all. All we're against is that for small people, you've got to be able to allow them a representative. That's it. Okay. Let me – there are a number of questions embedded in what – Why don't we start with gay? Your Honor, just to address. First of all, I think gay is dispositive on the preemption point. I think this court's conclusion – But Mr. Bland is saying that there's a way to distinguish gay. I don't believe they can be distinguished in that way. How about how to get around that? I think what gay says is that there's engaging in sophistry. If you attempt to distinguish the Thibodeau in little cases, that those are engaged – that was sophistry. And that's exactly what Mr. Bland is engaging in here. Essentially, the plaintiffs, the appellants here – The only circuit that's ruled on this so far is the Ninth Circuit, and it's against you. Well, actually, that's not true because the Ting case in the Ninth Circuit would uphold FAA preemption. I thought I was talking about Loewen, but I could be wrong. No. The Ting case in the Ninth Circuit actually has language in the case which addresses the FAA preemption point. I would submit that that's actually one of the situations in which the Ninth Circuit may have gotten it right. But it is true that this is an issue that is not fully explored in the body of appellate decisions. Having said that, I don't think the Court needs to get to FAA preemption. I think that this is one of the most straightforward arbitration cases, given that you have the history of the Johnson and Gay decisions, which are precisely on point here, and the fact that the choice of law analysis under the restatement is an analysis where the plaintiff concedes and the trial court decided the issue of whether there was a substantial relationship between the parties and the transaction in the State of Utah. So the first piece of the restatement test was satisfied or not satisfied, as the case may be, because it's actually in the negative under 187. The other three pieces to that test, the plaintiff here must have satisfied all three pieces. They must show there's a fundamental policy of New Jersey that conflicts with Utah law. They must show that New Jersey has a materially greater interest, and they must show that New Jersey law would have been applied in the absence of an effective choice of law. They can't show any of those elements. But here you have, if you have a New Jersey residence, and that's the only persons that are sought to be included within this particular class arbitration. If you have New Jersey residence, and what can a New Jersey do that when it considers class arbitration waivers unconscionable? What can it do to protect its consumers? It can do a lot of things, and in fact, it already does a lot of things. The very statute which plaintiffs seek relief under here once they reframe their case, exactly for this purpose, by the way, which shows how much this case relates to arbitration. As your honors undoubtedly know, the case was originally pled as a nationwide class action with a range of claims. It was reframed to try to bring the issue undoubtedly to this court on exactly this issue, which is arbitration as a New Jersey only case with only a consumer fraud claim. The Consumer Fraud Act has administrative remedies, and going to the point in Johnson and Gay, there are significant remedies available to a plaintiff here and to deter a defendant from allegedly bad conduct. This is exactly what was explored in Gay and in Johnson. But the point that New Jersey would say is that when you have people with very small claims that they really need, in order to get this issue resolved, the individuals don't have the money in order to do it. They don't need to have the money. The statute provides for mandatory attorney's fees and trebling of damages, and the same with the Utah statute. Mandatory attorney's fees and trebling of damages. And trebling of damages. When? Upon proving a successful claim. And there are administrative remedies. The statute empowers the attorney general to bring a claim, and if you go to the website of the New Jersey Department of Consumer Affairs, I think I've got the correct name, but the Consumer Agency in New Jersey, it specifically says that one of the main responsibilities of that department is the enforcement of this statute. So none of the reasons that exist for having a class action exist in this case. Yeah, but, you know, New Jersey isn't unique in providing administrative remedies. Other states have that. But wouldn't you really have to concede that state courts across the country have found these class action bans unconscionable? Isn't that the weight of the authority? I would not, Your Honor. In fact, we've cited in the briefs a litany of cases that are to the contrary, and, in fact, six of the circuits, including this circuit and Johnson and Gay, have upheld class action waivers in consumer agreements. So I would say, actually, I come from the Ninth Circuit, as the Court may have noticed. The Ninth Circuit, which, of course, is the proponent of the anti-class action waiver rule, is really an outlier here. You've got the Second Circuit, the Fifth Circuit, the Seventh Circuit, the Third Circuit, all of whom have upheld class action waivers. So it's quite to the contrary. And this is why I say I don't think that the Court even needs to get to preemption, which we don't think is a thorny issue, but because it's an untouched area of the law may be the thornier of the issues. The restatement analysis here is really very straightforward. Based on the language in Gay, there's absolutely no reason that New Jersey has a materially greater interest in this dispute than Utah does. American Express is located in Utah. That's in the record. There was an evidentiary finding. It was unchallenged by the plaintiffs in this case. New Jersey does not have a fundamental public policy. In fact, Mr. Bland conceded as much in his opening comments by saying that I think his comment was to the effect that Mohammed involved, you know, looking at the facts of that case. If nothing else you can take from the contemporaneous decisions in Mohammed and Delta funding, that New Jersey doesn't have a fundamental public policy. What New Jersey has said is we're going to look at this on a case-by-case basis. If you have a small claim and there are these other circumstances. How about certifying this? Should we do that? I think it's completely unnecessary. I think when you take the act. Somehow I thought you would say that. I'm sorry. I know it's shocking. But we don't think it's necessary. I think if you put together the constellation of decisions in Gay, Johnson, Mohammed, and Delta funding, and the factual record here. See, I mean this is an interesting case because plaintiff here presented no evidence. And there were findings of fact. So if you put together that constellation and the findings by the court, which are entitled to deference here on the facts, there's no need to certify the issue. I think it's straightforward. Going back to the just for the circuits dealing with the Federal Arbitration Act preemption, the only circuit that I thought I was aware of was the Loudon case, which was a Ninth Circuit case at 512F3rd, page 1213. And if I thought it was held that a state law rule barring aggregate actions is not preempted by the FAA because it applies equally to a contract that permits only individual, not aggregate litigation in court. So is there any other circuit that goes the other way? No. Okay. No. The Ninth Circuit also spoke to this issue in the Ting case though. All right. But, I mean, it's – I mean, in effect, what you're asking us to do is create a circuit split, aren't you, on that? Or you're saying don't reach the FAA? Well, I don't think there's a need to reach the FAA. And if the court reaches the FAA, I would – But as a federal court, isn't that the first thing we have to consider? I don't think so. I think you can actually look at it in reverse. Just, I think, as the court did when it certified the issue in Delta Funding, I actually read the Delta Funding decision very differently than Mr. Bland does. I think the Third Circuit in Delta Funding moved the issue to the state court and didn't address the constitutional issue because there was no need to get there. So it's contrary to how Mr. Bland would characterize the issue as, I guess, implicitly having reached some decision, which I don't see in that decision at all. But, yes, I guess it, you know, arguably would create a circuit split that somebody could take up, although that circuit split presumably exists now because of the gay decision. I think that the gay decision actually addresses preemption and satisfies the question. Yes, certainly a portion of it, and very well may address what Loudon did. But, again, Mr. Bland is trying to say, well, you don't have to get there because New Jersey has more of a surgical approach to this. Well, I think what Mr. Bland does actually in many respects is conflates the issues of choice of law. And he basically says New Jersey has the superior interest in protecting its consumers under the Consumer Fraud Act. Well, that's part of the analysis under 187. It is a part of actually probably the 188 analysis and not necessarily the 187 analysis. Right. The 187 analysis actually would look at the conflict in the enforceability of the contract to begin with. But the first prong of the 187-2 analysis throws you to 188. Correct. But, I mean, I do think he conflates the issue of contract law and consumer protection law. Every state has an interest in protecting its consumers. And what Mr. Bland would have this court do is conclude that each state's interest in protecting its consumers is so paramount that we essentially do away with the body of law, including in the restatement, including the FAA law, including, you know, historic law on the enforceability of contracts and choice of law provisions, because every state wants to protect its consumers. But there is this interest in having nationwide uniform contractual provisions in an environment in which businesses are entitled to conduct themselves in a way uniformly across 50 states. And that principle applies even more profoundly in this context, where you're dealing with a bank that issues credit cards. And this is brief. I mean, there's a wealth of case law and comment, regulatory comment, about the need for banks to be able to operate in a uniform fashion nationally. And if you accept Mr. Bland's argument, you could never do that. I'm from Delaware, so I understand that one pretty well. But that's as to interest rates. No, I'm sorry. This is as to one aspect of an arbitration provision in an otherwise lengthy contract. That's true, but the principle remains the same, which is that banks, and for that matter all national businesses, but certainly banks as the most profound example of that, need to be able to contract with comfort that their contracts will be enforced and that they will not have to try to comply with the laws of 50 different states when they draft a contract. It's just it's not commercially feasible, and it's contrary to the wealth of authority, which says you should be able to dictate a contractual term. The court below here found that the, because it's the truth, but the court also made findings, is that the arbitration provision here, the agreement, was sent out with the original agreement. It was accepted by the plaintiff here. The plaintiff never challenged that. The plaintiff didn't argue he didn't understand the agreement. He didn't argue the print was too small. He didn't argue the procedure was unfair. He didn't argue all of those things that you see in arbitration cases from time to time. And no, why? Because he couldn't. The process here is extremely fair. He got it. He's only arguing one thing. I mean, the issue is pretty clear, that New Jersey is not against arbitration provisions. New Jersey is only against arbitration provisions that prohibit class arbitrations. Well, and that in itself isn't necessarily true, because that's not what the Delta funding case held. Or Mohammed? Or necessarily Mohammed, which said it's a case-by-case decision. And none of the facts that were relevant to the decision of Mohammed are in the record here. So you can argue all day long that this is a small claim, but let me just note, that's nowhere in the record. And plaintiff hasn't proven it. So I don't know how one could make that decision here. Thank you very much. Thank you very much. Mr. Blanton. With respect to the Federal Arbitration Act preemption issue, Your Honor, the Loudon case from the Ninth Circuit is really decisive here. And it's important for this Court to be clear about embracing that. Your opponent would argue that the real decisive case is Gay, not Loudon. Well, Loudon has a footnote which distinguishes Gay on exactly, exactly the same reason that I'm trying to distinguish Gay. Because I did the Scott versus singular wireless case in the Washington Supreme Court. And the Court analyzed the preemption issue exactly the way that the New Jersey Supreme Court, which my firm also handled, did in the Mohammed case. They said there's a difference between class action bans and arbitration clauses. And the class action ban is unconscionable whether it's an arbitration or not. And they're different issues. And so in Loudon, they were asked to find that the Scott case was preempted and to overturn it. And the Ninth Circuit said it's completely different. We've read on the Gay case. And it says that Pennsylvania is dealing with a ban on class actions in court, that you're not allowed to do that. And that is a conflict with the Federal Arbitration Act. But this isn't. And they distinguished it. So we rely upon the same distinction as the footnote in Loudon. And there was a cert petition in the Loudon case which was denied. And there have been something like 12 other cert petitions claiming that Gay creates a conflict between the circuits. And I think that if you look at the distinction, it doesn't. With respect to the choice of law issue, I deeply regret that the New Jersey Intermediate Appellate Courts have not broken out. Their practice has not been to do a very detailed or rigorous analysis of 188's various factors and 187's three factors. They tend to sort of glom it together. But in their holdings, the holdings are consistent, that when you have an out-of-state lender and an in-state consumer, they're repeatedly reaching a holding that New Jersey law governs. And I admit they don't break out the Section 188 factors and go through them one at a time in a way that would be more analytically precise. But to the extent this is a state law issue, and this is not a National Bank issue. This is not the Marquette case. This is not this. New Jersey expressly adopted 187 and 188. Yes. New Jersey has adopted those two sections. But it's one of those things where their Intermediate Appellate Courts then don't go through a 20-page explanation of it. They adopt the restatement sections. But then when they apply them, they only have a couple of sentences. And they tend to focus on overwhelmingly the factor that they focus on is the residence of the consumer. Maybe it's because the New Jersey State Appellate Courts don't have many clerks. Yeah. I mean, that's certainly, I think that could well be. With respect to the unconscionability issue, should contracts always be enforced as written? This Court in the Alexander v. Anthony case said arbitration clauses are generally enforceable and will be favored. But in that particular case, it was a contract of adhesion, which this Court said that by itself, just like Muhammad, is enough to make it procedurally unconscionable. Usually when you think of these things, forgetting for the moment whether there's federal preemption, what you think of are there sufficient contacts with one state that wants to have its law applied? And here you have some pretty significant contacts. One, the banks in Utah. Two, it claims in the contract that the money is loaned from Utah. And it has other reasons that Utah is applicable. Why aren't those significant? They have some significance, but to the New Jersey courts, the consumers in New Jersey, a lot of the New Jersey cases seem to indicate that they think that the contract, if a New Jersey consumer gets an offer and they sign the form or they click yes, I accept, and they send it back, did that contract create a New Jersey? New Jersey courts seem to think it's at least mixed. Then the New Jersey consumer goes and uses their American Express card in a New Jersey restaurant or a New Jersey hotel or something, the courts in New Jersey feel that that's an expenditure in New Jersey. Now, they say, well, that money was loaned from Utah, but all the actual economic activity and human activity is really taking place in New Jersey. The New Jersey courts, their holdings. Now, if this was governed by the Marquette case, the National Bank Act, and I understand Your Honor's point about being from Delaware, and the National Bank Act allows them to export a lot of things, interest rates and so forth. It doesn't allow them to export choice of law provisions. This court said in the Gibbs case and the Supreme Court said in the Claxton case, choice of law is governed by New Jersey law, and I think Your Honor has some questions about whether New Jersey law is as wise or as thoughtful or as careful as it could be. It sounds like, you know, they're trying to protect their citizens.  The question is when you have this type of situation, and again, forgetting for the moment the federal preemption, and forgetting for the moment when you apply 187.2 and 188 analysis, 188 combined with Section 6, where does it get you? Obviously, in the third prong it favors you, but the first and the second prongs are pretty close. Well, there's these three cases, Beagle, Turner, and Weiner Motors, where the New Jersey intermediate appellate courts, pretty similar cases, thought we were right. Thank you very much, Your Honor. Thank you. Thank you to both counsels for a very well presented argument. We'll take the matter under advisement. Thank you. Thank you. Next case is Aldrich-Knein, Associates v. Kline.